Noneluna Enjambre WALDON *v.*
Ronald David WALDON

CA 90-86                                      806 S.W.2d 387

Court of Appeals of Arkansas
Division I
Opinion delivered March 27, 1991

*J. F. Atkinson, Jr.*, for appellant.

*Cravens & Cravens*, by: *David R. Cravens*, for appellee.

JUDITH ROGERS, Judge. The parties in this post-decree action were divorced in October of 1979. They had a daughter, Jennifer, who was born with Downs Syndrome, and appellant,

Noneluna Waldon, was granted custody of the child. In addition to paying child support, appellee, Ronald Waldon, was ordered in the decree to be responsible for all extra-ordinary medical, dental and hospital bills, and all ordinary medical bills incurred by the child associated with Downs Syndrome. In this regard, the appellee was also ordered to provide medical insurance coverage for the child. In 1987, appellant obtained an increase in child support to $120 to be paid every two weeks.

Appellant filed the present action in February of 1989, seeking to further increase the amount of child support, and to hold appellee in contempt for the non-payment of medical bills. After a hearing on November 8, 1989, the chancellor declined to hold appellee in contempt, but ordered him to pay the six medical bills submitted. The chancellor increased child support to $85 per week, and ruled that each party would bear their own costs and attorneys' fees. It is from these findings that appellant brings this appeal. We affirm.

Appellant first argues that the chancellor erred by not citing appellee for contempt, and in not awarding her attorney's fees. On the issue of contempt, appellant testified that she had forwarded six bills totalling $544.40 for payment to the Veteran's Administration in Fort Worth, Texas, appellee's employer, through which he has medical insurance. She said that these bills were not paid. On cross-examination, it was pointed out that at the last hearing in 1987, appellant was directed to submit all claims to appellee at his home address, which was read into the record. Appellee testified that he had received bills from only two doctors, one for a general check-up, and two others from an eye clinic for glasses. Appellee stated that he was informed by his insurance carrier that the glasses were not covered, as nearsightedness was common to any child. He said that he believed that these three bills were for ordinary expenses unrelated to the condition of the child, and thus he thought that he was not responsible for them.

The refusal of a trial court to punish an alleged contemnor will be reviewed by an appellate court only to determine whether there has been an abuse of discretion. *Warren v. Robinson*, 288 Ark. 249, 704 S.W.2d 614 (1986). The chancellor found that the medical bills were routine expenses, but

nevertheless ordered appellee to pay them. We think the chancellor was in a better position to evaluate the willfullness of appellee's conduct, and we find no abuse of discretion on this record.

On appeal, appellant seems to make a further argument that the history of this case reveals a course of conduct of appellee's failure to inform appellant of his job and pay status, as ordered. As appellee points out, there is no current order requiring appellee to keep appellant apprised of these things. One cannot be held in contempt for the failure to do something which he or she has not been ordered to do. *See Dees* v. *Dees*, 28 Ark. App. 108, 771 S.W.2d 299 (1989).

Attorney's fees in divorce and support cases are not awarded as a matter of right, but rest within the chancellor's discretion, whose decision will not be disturbed unless that discretion is abused. *See Williford* v. *Williford*, 280 Ark. 71, 655 S.W.2d 398 (1983). There was testimony that appellee had travelled from Texas to appear at trial. Under the circumstances, we cannot say the chancellor abused his discretion in not awarding attorney's fees to appellant.

Under her second claim of error, appellant combines two arguments concerning the amount of increased child support set by the chancellor. First, she argues that the chancellor erred in calculating appellee's net income by including a deduction for appellee's retirement plan. Second, she contends that the chancellor improperly applied the chart by including as dependents appellee's two children of his present marriage. We address these contentions in the order in which they are stated.

In its *per curiam, In re: Guidelines for Child Support Enforcement*, 301 Ark. 627, 784 S.W.2d 589 (1990), the supreme court stated that weekly take home pay, as it relates to the Family Support Chart, refers to the definition of income in the federal income tax laws, less proper deductions for the following items: (1) Federal and state income tax; (2) Social security (FICA) or railroad retirement equivalent; (3) Medical insurance; and (4) Presently paid support for other dependents by Court order. The appellee's statement of earnings reflects that he is paid on a bi-weekly basis, and that $139.10 is withheld from each check for a retirement plan. Appellee testified that, as a

federal employee, he is not a participant in the general social security system, and that his participation in the federal retirement plan is mandatory, and is set at a minimum of seven percent of his gross earnings.

■ We agree with the chancellor that this was a proper deduction in calculating appellee's take home pay. Appellee's contribution to the retirement plan is involuntary, and can be likened to amounts automatically withheld from earnings as listed in categories one and two mentioned above. To have included this in appellee's take home pay would not have accurately reflected his disposable income. We find no error on this point.

In setting the amount of child support at $85 a week, the chancellor, noting that appellee had two other children, applied appellee's income to the chart based on three dependents. He then divided that amount by three, and added "a small amount for this child." Appellant contends that it was error for the chancellor to have included appellee's other children as dependents, and that appellee's income should have been applied to the chart for Jennifer alone.

Ordinarily, the amount of child support lies within the sound discretion of the chancellor. *Ross* v. *Ross*, 29 Ark. App. 64, 776 S.W.2d 834 (1989). Arkansas Code Annotated § 9-12-312(2) (Repl. 1991) provides:

> In determining a reasonable amount of support, initially or upon review to be paid by the noncustodial parent, the court shall refer to the most recent revision of the family support chart. It shall be a rebuttable presumption for the award of child support that the amount contained in the family support chart is the correct amount of child support to be awarded. Only upon a written finding or specific finding on the record that the application of the support chart would be unjust or inappropriate, as determined under established criteria set forth in the support chart, shall the presumption be rebutted.

Although the courts are required to refer to the family support chart, there are numerous matters which have a strong bearing in determining the amount of support. *Ross* v. *Ross*, *supra*. A

chancellor's finding as to support will not be disturbed on appeal unless it is shown that the chancellor abused his discretion. *Borden* v. *Borden*, 20 Ark. App. 52, 724 S.W.2d 181 (1987).

We agree with appellant that the chancellor should not have applied the chart based on three dependents. Although this may be a proper consideration bearing perhaps on a payor spouse's ability to pay, the chart should be applied to the child that is before the court. The result of applying the chart as the chancellor did here is that the amount of support for the one child was diluted, as the chart is structured so that the amount of support per child decreases in proportion to the number of added dependents.

While there is a rebuttable presumption that the amount of support according to the chart is correct, the chancellor in his discretion is not entirely precluded from adjusting the amount as deemed warranted under the facts of a particular case. As explained by the supreme court, the presumption may be overcome if the chancellor determines, upon consideration of all the relevant factors, that the chart amount is unjust or inappropriate. *See Scroggins* v. *Scroggins*, 302 Ark. 362, 790 S.W.2d 157 (1990). The relevant factors include food, shelter and utilities, clothing, medical and education expenses, accustomed standard of living, insurance and transportation expenses.[1] *Id. See also In re: Guidelines for Child Support Enforcement, supra.* However, when deviating from the chart, the chancellor must explain his or her reasoning by the entry of a written finding or by making a specific finding on the record. *See Scroggins* v. *Scroggins, supra*; Ark. Code Ann. § 9-12-312(2) (Repl. 1991).

By our calculations, the chart amount of support for one child was $97 per week. While the chancellor should not have determined the amount of support in the manner in which he did, we find no abuse of discretion in the amount of support he

---

[1] Although there is no indication that the list is exhaustive, we note that other dependents of a payor spouse is not included. The *per curiam* does provide a deduction for "presently paid support for other dependents by *court order*," in arriving at the payor spouse's income to be applied to the chart. (Emphasis ours.) However, that is not the situation before us as the other dependents at issue here are the appellee's children by his current marriage.

ordered. In setting the amount, the chancellor explained that he was not only taking into account appellee's other children, but also appellee's considerable obligations relative to the medical expenses of this child, which, in addition to the payment of support, would continue beyond the age of majority. In this regard, appellee is required to maintain insurance coverage, and is responsible for payment of the deductible. Additionally, appellee is responsible for paying medical expenses that are not covered by insurance. Although it would have been preferable for the chancellor to have applied the chart based on one child before making any adjustments, the end result reached by the chancellor represents only a slight deviation from the correct chart amount. We believe the findings made by the chancellor on the record were sufficient to rebut the presumption, and we cannot say that he abused his discretion.

We note, however, that the chancellor relied on an unpublished opinion of this court as authority for considering the other children as dependents.[2] While appellant does not claim this as a predicate for error, we take this opportunity to again point out that citing, quoting or referring to unpublished opinions of this court is prohibited by Rule 21 of the Rules of the Arkansas Supreme Court and Court of Appeals. *See Yockey v. Yockey*, 24 Ark. App. 169, 750 S.W.2d 420 (1988); *Aaron v. Everett*, 6 Ark. App. 424, 644 S.W.2d 301 (1982).

Affirmed.

DANIELSON and MAYFIELD, JJ., agree.

---

[2] We further note that the case referred to by the chancellor involved a reduction in child support based partially on the circumstance that custody of two of the parties four minor children was changed to the payor spouse, and is thus not directly supportive of the chancellor's ruling.