Marillee MORELAND *v.* Robert J. HORTMAN

CA 00–527 39 S.W.3d 23

Court of Appeals of Arkansas
Division III
Opinion delivered February 7, 2001

*Frances Morris Finley*, for appellant.

No response.

JOSEPHINE LINKER HART, Judge. In this case, appellant, Marilee Moreland, argues that it was improper for the chancellor to consolidate the child-support case involving her child by her former spouse, appellee, Robert J. Hortman, with a child-support case involving appellee's child by another woman. Further, appellant argues that the chancellor erred in determining appellee's child-support payment for her child by considering appellant as having two dependents. Finally, she argues that the chancellor erred in finding a change of circumstances supporting a reduction in child support. We reverse and remand.

Appellee is the father of five children born to three different women. Appellee was married to appellant and had two children, Robbie J. Hortman, now emancipated, and Christina A. Hortman. Appellant and appellee were divorced in 1985. Appellee then married Petheia Hortman and had one child, Chelseia Hortman. They divorced in 1992. Appellee then married Julie D. Hortman, who bore him two children.

In an order filed December 1, 1997, the chancellor ordered appellee to pay to appellant child support in the amount of $1,680 for her two children based on the chancellor's finding that appellee's net monthly income was $8,000, having been reduced from $8,903.97 by credits for current and future increases in child support for his child by Petheia Hortman. [1] The child-support amount was to be reduced to $1,200 a month when their older child graduated from high school in June 1998. The chancellor also found that appellee was in arrears in the amount of $5,320 for past due child support and $4,738.36 for unreimbursed medical expenses. He was ordered to pay the arrearages in twenty-four

---

[1] The child of Petheia Hortman was receiving $225 in child support by court order and $150 of unordered support.

equal monthly installments of $419.09. On July 6, 1998, following a hearing on appellant's petition for a contempt citation, appellee stipulated to an arrearage of $6,526.63, and he was ordered to pay an additional amount of $100 a month in arrearages. Appellee's total payments, including arrearages, was $1,719.09.

On April 30, 1999, appellee initiated an action by filing a motion to consolidate his case for the support of appellant's child with a child-support case for his child by Petheia Hortman. Appellee's current wife was also named as a necessary third party. Appellee's petition sought reduction of his child-support obligation for his child by appellant and his child by Petheia Hortman by counting the children in his current household and distributing in equal portions the amount of support for five children. Appellee also alleged that there had been a substantial change in circumstances in that he now has two additional children by his current wife, that he had incurred large medical bills concerning the birth of one of those children, and that he had suffered a decrease in income. Petheia Hortman, who, prior to this petition, received an increase in child support to $714 per month, argued that appellant's child-support obligations should be based on two children, her child and the unemancipated child of appellant. Appellant objected to the consolidation, arguing that for the court to apply the chart based on all of appellee's dependents would be improper under Arkansas case law.

In her order filed November 10, 1999, the chancellor granted appellee's request that the cases be consolidated for the purpose of determining child support and considered both appellee's child by appellant and appellee's child by Petheia Hortman as before the court. She further concluded that there had been a change in appellant's income due to the loss of a car allowance and other compensation and that the child-support award should be reduced "based upon [appellee's] net monthly income of $6,854." The chancellor refused to consider children in appellant's household with his current wife and referred to Administrative Order No. 10 (2000) for the amount of child support to be paid for two dependents. The chancellor then took this amount and divided it equally between the two children.[2]

---

[2] Because appellee's income exceeded the amount on the chart in Administrative Order No. 10, in reaching a specific amount of child support, the chancellor used a

Appellant first contends that the trial court erred in consolidating the case involving the determination of the amount of child support for appellant's child with the case involving the determination of the amount of child support for Petheia Hortman's child. Under a separate point, appellant further contends that under the Administrative Order No. 10 (2000), appellee's dependents should not be counted together for the purposes of determining the amount of child support. We agree that the chancellor erred in both matters.

■ "When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delays." Ark. R. Civ. P. 42(a) (2000). A court's decision to consolidate cases will not be reversed absent a showing of abuse of the court's discretion. *See Pennington v. Harvest Foods, Inc.*, 326 Ark. 704, 716, 934 S.W.2d 485, 491 (1996).

■ Here, appellee initiated a petition to consolidate the cases when there was no pending litigation in either case. In conjunction with this petition, he further sought to reduce the child support he paid to appellant. "[A] statute or per curiam order of the Arkansas Supreme Court that is in effect at the time of the hearing on the request for modification of child support is the applicable law pertaining to the modification." *Heflin v. Bell*, 52 Ark. App. 201, 204, 916 S.W.2d 769, 770 (1996). Thus, we apply Administrative Order No. 10 (2000).

■ As is apparent from that order, the method of application of the administrative order is not to count the total number of the

---

combination of the chart and the percentages provided for in Section III(b) of the order. The proper procedure, however, would have been to ignore the chart and use only the percentages. Section III(b), provides that "[w]hen the payor's income exceeds that shown on the chart, use the following percentages of the payor's weekly or monthly income... to set and establish a sum certain dollar amount of support...." Here, appellee's income exceeded the chart, so the chancellor should have disregarded the chart and multiplied the appellee's income by the requisite percentage provided in Section III(b). While previous versions of the guidelines were more specific in advising disregard of the chart, *see In re: Guidelines for Child Support*, 314 Ark. Ark. 644, 646, 863 S.W.2d 291, 294 (1993); *In re Guidelines for Child Support Enforcement*, 305 Ark. 613, 614-15 (1991), we have no reason to conclude that this practice was changed by the omission of this language.

payor's dependents and divide the amount of child support recommended by the administrative order by the number of dependents. Rather, in determining income as defined by Section II, the order provides that "[p]resently paid support for other dependents by Court order," is deducted from the payor's income. Furthermore, under the considerations for deviation from the administrative order under Section V(b)(7), the court may consider "[t]he support required and given by a payor for dependent children, even in the absence of a court order." Moreover, we have previously noted in other cases that the amount set forth in the family support chart in the administrative order should be applied to the child that is before the court, and in applying the family support chart, it is improper for the chancellor to have determined the amount of child support to be paid based on the payor's total number of dependents and then divide that amount by the total number of dependents. *See Arkansas Dep't of Human Servs. v. Forte*, 46 Ark. App. 115, 877 S.W.2d 949 (1994); *Waldon v. Waldon*, 34 Ark. App. 118, 123-24, 806 S.W.2d 387, 390 (1991).

█ Even if we considered it proper to consolidate the two cases, we note that the two children were members of separate households. To be considered as the chancellor ordered is to treat two separate households with one child each as though there was only one household with two children. Thus, the manner in which the chancellor applied the administrative order was contrary to the language of the administrative order, as well as *Forte* and *Waldon*. We reverse the chancellor on this point.

█ We further hold that the chancellor abused her discretion in consolidating the two cases. While both cases involved appellee's dependents, as previously discussed, the administrative order prescribes that the child-support amount should be based on the formula set forth in the order, with appropriate reductions in support because of other support obligations being considered in the manner set forth in Sections II and V of the order. Given that the administrative order mandates the separate evaluation of appellant's support obligation for each child, with that evaluation necessarily considering different circumstances, the child-support amount to be paid by appellee to appellant and to Petheia Hortman thus involved separate questions of law and fact. Thus, we also reverse the chancellor on this point.

██ Appellant also raises a third issue, arguing that appellee did not show a change of circumstances requiring a modification of the child-support amounts. The chancellor, in finding a change of circumstances, found that appellee's income had been reduced by the loss of a car allowance and the loss of income from another business. A modification in the amount of child support to be paid must be based upon a change in circumstances, and the party seeking the modification has the burden of showing a change in circumstances sufficient to require modification. *See Payton v. Wright*, 63 Ark. App. 33, 36, 972 S.W.2d 953, 955 (1998). We note that a reduction in income may give rise to a change of circumstances. *See* Ark. Code Ann. § 9-14-107(a) (Repl. 1998)(providing that "[a] change in gross income of the payor in an amount equal to or more than twenty percent (20%) or more than one hundred dollars ($100) per month shall constitute a material change of circumstances sufficient to petition the court for review and adjustment of the child support obligated amount according to the family support chart after appropriate deductions"); *see also* Ark. Code Ann. § 9-14-107(c) (Repl. 1998). We note that there is nothing in the 1997 order or this record which discusses appellee's gross income, which makes a determination of appellee's gross income problematic. *See Ritchey v. Frazier*, 57 Ark. App. 92, 95, 940 S.W.2d 892, 893 (1997)(holding that "[s]ince the record contains no evidence demonstrating appellee's income as of the time of the agreed order, we cannot say that the chancellor's decision that appellant failed to show that appellee's income had increased since the entry of that order is clearly erroneous"). However, given the chancellor's improper joinder of the two cases and the consequent errors in applying the administrative order to determine appellee's income, we reverse the chancellor on this point as well. Appellee, in his discretion, may make further requests for modification of child support once the cases are severed, and the chancellor should determine if there was a reduction in appellee's income, and if so, whether there is a material change in circumstances sufficient to modify child-support amounts and then use the administrative order in determining that amount. *See Heflin v. Bell*, 52 Ark. App. 201, 206, 916 S.W.2d 769, 771-72 (1996)(holding that "the specified change in the payor's income does not necessarily support the determination but merely constitutes a material change of circumstances sufficient to allow the petition to the court for its review and adjustment of child support").

Reversed and remanded.

JENNINGS and CRABTREE, JJ., agree.